**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                       :

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD.; ACP MASTER, LTD.; NOVORIVER S.A.; 683 CAPITAL PARTNERS, LP; ADONA LLC; EGOZ I LLC; EGOZ II LLC; MASTERGEN, LLC; ERYTHRINA, LLC; AP 2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; WASO HOLDING CORPORATION; APE GROUP SPA; ROMANO CONSULTING SPA; ICARO SRL; and ELAZAR ROMANO,<br><br>               Plaintiffs,<br><br>           - against -<br><br>THE REPUBLIC OF ARGENTINA,<br><br>              Defendant. | Case No.:  1:24-CV-07247 (LAP)<br><br>The Honorable Loretta A. Preska<br><br>**ORAL ARGUMENT REQUESTED** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT THE REPUBLIC OF ARGENTINA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:   (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for the Republic of Argentina*

January 27, 2025

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ........................................................................................................3

    A.    The GDP-Linked Securities ...........................................................3

    B.    This Court's Dismissal of the Prior Actions ................................5

    C.    Plaintiffs' Appeal of the Prior Actions ........................................6

    D.    This Serial Litigation .....................................................................6

ARGUMENT .............................................................................................................7

I.    PLAINTIFFS' LATEST COMPLAINT IS UNTIMELY BECAUSE IT DOES NOT COMPLY WITH C.P.L.R. § 205(a). .........................................7

II.    PLAINTIFFS CANNOT BRING EITHER THE REPRESENTATIVE OR INDIVIDUAL CLAIMS THAT THEY NOW PURPORT TO PURSUE. ...................9

    A.    Plaintiffs Cannot Assert the Time-Barred Claims of Other Holders Not Party to the Prior Actions. ....................................................9

    B.    The No-Action Clause Bars Plaintiffs From Pursuing Their Alternative Claims for Their Sole Benefit. ......................................................11

III.    PLAINTIFFS STILL HAVE NOT COMPLIED WITH THE NO-ACTION CLAUSE. .................................................................................................12

IV.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED COMPLIANCE WITH OTHER THRESHOLD REQUIREMENTS FOR BRINGING THEIR CLAIMS. .........................................................................................16

    A.    Plaintiffs Do Not Plead That They Possess the Right To Bring Their Latest Claims. ...........................................................................................16

    B.    The Prescription Clause Bars WASO's and the Ape Group Plaintiffs' Claims. ...........................................................................................18

CONCLUSION ........................................................................................................19

## TABLE OF AUTHORITIES

**Cases** *Page(s)*

*ACE Sec. Corp.* v. *DB Structured Prod., Inc.*,
   38 N.Y.3d 643 (2022) ...................................................................................................11, 13

*Allstate Ins. Co.* v. *Longwell*,
   735 F. Supp. 1187 (S.D.N.Y. 1990)..................................................................................15

*Ape Group SPA* v. *Rep. of Argentina*,
   2022 WL 463309 (S.D.N.Y. Feb. 15, 2022)............................................................10, 18, 19

*Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*,
   2020 WL 70348 (S.D.N.Y. Jan. 7, 2020) ............................................................................3, 5

*Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*,
   2021 WL 1177465 (S.D.N.Y. Mar. 29, 2021) .......................................................................5

*Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*,
   2024 WL 1367960 (S.D.N.Y. Mar. 31, 2024) ...........................................................1, 4, 5, 6

*Azeem* v. *Colonial Assurance Co.*,
   468 N.Y.S.2d 248 (N.Y. App. Div. 1983) ..........................................................................16

*BlackRock Balanced Cap. Portfolio (FI)* v. *Deutsche Bank Nat'l Tr. Co.*,
   2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018) ......................................................................17

*Breitman* v. *Xerox Educ. Servs., LLC*,
   2013 WL 5420532 (S.D.N.Y. Sept. 27, 2013)....................................................................16

*Cestaro* v. *Prohaska*,
   669 F. Supp. 3d 276 (S.D.N.Y. 2023)..................................................................................8

*Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG*,
   117 N.Y.S.3d 2 (N.Y. App. Div. 2019) .............................................................................11

*DNAML Pty, Ltd.* v. *Apple Inc.*,
   2015 WL 9077075 (S.D.N.Y. Dec. 16, 2015) ...............................................................16, 17

*Dyno-Bite, Inc.* v. *Travelers Cos.*,
   439 N.Y.S.2d 558  (N.Y. App. Div. 1981) .........................................................................16

*Fan Engine Securitization Ltd.* v. *Deutsche Bank Tr. Co. Ams.*,
   2019 WL 4805569 (S.D.N.Y. Oct. 1, 2019)........................................................................14

*Fed. Hous. Fin. Agency* v. *WMC Mortg., LLC*,
   2015 WL 9450833 (S.D.N.Y. July 10, 2015) .....................................................................14

*Feldbaum* v. *McCrory Corp.*,
  1992 WL 119095 (Del. Ch. 1992) ...................................................3, 12, 13, 14

*Lehman Bros.* v. *Hughes Hubbard & Reed, L.L.P.*,
  92 N.Y.2d 1014 (1998) ..............................................................................8

*Malay* v. *City of Syracuse*,
  25 N.Y.3d 323 (2015) ...........................................................................1, 2, 8

*Newmont Mines Ltd.* v. *Hanover Ins. Co.*,
  784 F.2d 127 (2d Cir. 1986)........................................................................14

*Palatkevich* v. *Choupak*,
  152 F. Supp. 3d 201 (S.D.N.Y. 2016)............................................................8

*Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*,
  585 F. Supp. 3d 540 (S.D.N.Y. 2022)..........................................................16

*Racepoint Partners LLC* v. *JPMorgan Chase Bank*,
  2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) .............................................17, 18

*RBC Cap. Mkts., LLC* v. *Educ. Loan Tr. IV*,
  2011 WL 6152282 (Del. Ch. Dec. 6, 2011) ..................................................12

*Reliance Ins. Co.* v. *PolyVision Corp.*,
  9 N.Y.3d 52 (2007) ....................................................................................11

*Royal Park Invs. SA/NV* v. *HSBC Bank USA, N.A.*,
  2018 WL 679495 (S.D.N.Y. Feb. 1, 2018).....................................................17

*Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*,
  2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ...................................................3

*Semi-Tech Litig., LLC* v. *Bankers Tr. Co.*,
  272 F. Supp. 2d 319 (S.D.N.Y. 2003)..........................................................17

*Thompson* v. *Gjivoje*,
  896 F.2d 716 (2d Cir. 1990)........................................................................14

*Tracy* v. *NVR, Inc.*,
  737 F. Supp. 2d 129 (W.D.N.Y. 2010) .........................................................15

*U.S. Bank Nat. Ass'n* v. *Barclays Bank PLC*,
  2013 WL 1180414 (S.D.N.Y. Mar. 12, 2013) ................................................15

**Statutes**

N.Y. Gen. Oblig. Law § 13-107...................................................................17

**Other Authorities**

C.P.L.R. § 205................................................................................................................... *passim*

C.P.L.R. § 213................................................................................................................... 10, 13

## PRELIMINARY STATEMENT

In 2019 and 2020, Plaintiffs—hedge funds and other sophisticated investors—sued the Republic of Argentina for payments purportedly due for calendar year (or "Reference Year") 2013 under the Republic's dollar-denominated GDP-linked securities (the "Securities"). In their rush to sue the Republic, Plaintiffs elected to bypass the requirements of Section 11 of the Global Security (the "No-Action Clause"). Because Plaintiffs did not comply with the No-Action Clause, this Court correctly granted summary judgment to the Republic and dismissed Plaintiffs' claims as "preclude[d]" and "not properly before the Court." *Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 2024 WL 1367960, at *12 (S.D.N.Y. Mar. 31, 2024) ("*Aurelius III*").

Plaintiffs have appealed that ruling, claiming that this Court "misread" Section 11 of the Global Security. *In re Argentine GDP-Linked Sec. Litig.*, 24-1209 (2d Cir.), ECF No. 46.1 at 26. Instead of waiting for the Second Circuit's decision, Plaintiffs seek a "do-over" in this Court. Invoking C.P.L.R. § 205(a), which allows refiling of a dismissed lawsuit in limited circumstances, Plaintiffs say that they can reassert their own dismissed claims *and* the claims of all other holders of the Securities ("Holders") because they supposedly complied with the No-Action Clause *after* this Court dismissed their claims. This Court should reject Plaintiffs' premature and flawed effort to resuscitate their prior actions (the "Prior Actions") before the Second Circuit can even rule on whether this Court was right in dismissing those actions.

*First*, Plaintiffs' latest Complaint does not meet C.P.L.R. § 205(a)'s requirements. By its terms, Section 205(a) applies only after an earlier-filed action is "terminated." But, fatally, Plaintiffs concede that they are "appealing this Court's summary judgment ruling" while simultaneously pressing this new action. (Compl. ¶ 3.) Thus, under C.P.L.R. § 205(a), Plaintiffs' pending appeal means that their first action was never "terminated." *See Malay* v. *City of Syracuse*, 25 N.Y.3d 323, 329 (2015) ("where an appeal is taken as of right, the prior action terminates for

purposes of CPLR 205(a) when the nondiscretionary appeal is truly 'exhausted,' either by *a determination on the merits or by dismissal of the appeal*") (emphasis added).

*Second*, Plaintiffs cannot bring either of the claims they attempt to plead.  In the Prior Actions, Plaintiffs pursued only their own claims.  For the first time, Plaintiffs now purport to be acting in a representative capacity, asserting claims seeking Reference Year 2013 payments for "*all* the GDP Securities issued" on behalf of all Holders of the Securities and, alternatively, for themselves.  (Compl. ¶ 20 (emphasis added).)  Neither theory works.  It is too late to bring claims on behalf of other Holders because those claims expired long ago under both New York's six-year statute of limitations *and* the five-year prescription clause in Section 14 of the Global Security (the "Prescription Clause").  And Plaintiffs cannot rely on Section 205(a) to resuscitate the expired claims of other Holders because Section 205(a) applies only to those claims brought by *the same plaintiffs to the original action*.  Plaintiffs' alternative claims for "those portions of the Payment Amount representing each Plaintiff's beneficial ownership interest in the GDP Securities" (Compl. ¶ 49) fail under the Global Security's No-Action Clause, which requires that any claims brought under that provision must be "for the equal, ratable and common benefit of all Holders of the Securities."  (Compl. Ex. B (2005 Global Security) § 11, at R-13.)

*Third*, Plaintiffs still have not complied with the No-Action Clause.  Under Section 11 of the Global Security, individual Holders (like Plaintiffs) can assert a breach of contract claim only if the Trustee first refuses a valid request to litigate from 25 percent of Holders of outstanding Securities.  (*Id.*)  Plaintiffs allege that they asked the Trustee to pursue those claims *on July 25, 2024*, and after reaching the 25 percent threshold with the help of unnamed "others." (Compl. ¶¶ 45–48.)  But, by the time the Trustee received the request on July 25, 2024, it could not act because the Trustee's (and these "other[]" Holders') claims for Reference Year 2013

payments had expired, and the Trustee could not avail itself of Section 205(a) because it was not a party to the Prior Actions. Plaintiffs' claimed compliance with the No-Action Clause would defeat the No-Action Clause's purpose of "centraliz[ing] enforcement powers" in the Trustee. *Feldbaum* v. *McCrory Corp.*, 1992 WL 119095, at *6 n.11 (Del. Ch. 1992).

*Fourth*, Plaintiffs' claims cannot survive other threshold defects of their latest Complaint. For one, Plaintiffs do not adequately plead that they have the right to bring these claims, either based on their ownership of the Securities when payment was allegedly due *or* their acquisition of litigation rights thereafter. *Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*, 2018 WL 739580, at *14 (S.D.N.Y. Jan. 10, 2018). In addition, Plaintiff WASO Holding Corporation ("WASO") acquired hundreds of millions of dollars in Securities *after* December 15, 2019, when the Securities' contractual prescription period had expired. Ape Group SpA, Romano Consulting SpA, Icaro SRL, and Elazar Romano (the "Ape Group Plaintiffs") did not even file suit within the prescription period. Those claims are untimely for these additional reasons.

## BACKGROUND

### A.    The GDP-Linked Securities

As the Court knows, by late 2001, Argentina had entered into a severe economic crisis. *See Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 2020 WL 70348, at *2 (S.D.N.Y. Jan. 7, 2020) ("*Aurelius I*"). To restructure its debt, "the Republic launched voluntary debt exchanges" in 2005 and 2010 "whereby owners of the country's defaulted debt could exchange their non-performing bonds for new securities." *Id.* As part of those exchanges, the Republic issued three new types of bonds and a sweetener bonus—the Securities, which gave participants in the exchanges an opportunity to "'b[uy] in' to the Argentinian economy." *Id.*

The Securities are governed by (1) the Trust Indenture, dated June 2, 2005 (as amended in April 2010, the "Indenture"), which also governs several other securities issued as part

of the exchanges; and (2) the Global Security, which defines the specific terms and conditions of the Securities. *Aurelius III*, 2024 WL 1367960, at *2–3.[1] Under the Global Security, the Republic must make a "Payment Amount" for a given Reference Year only if: (i) "Actual Real GDP" exceeds "Base Case GDP" for the relevant Reference Year; (ii) "Actual Real GDP Growth" exceeds "Base Case GDP Growth" for the Reference Year; and (iii) any Payment Amount does not exceed a contractually defined "Payment Cap." (Compl. Ex. B (2005 Global Security) § 2(b), at R-5–R-6.)

By their terms, the Indenture and Global Security expressly circumscribe Holders' right to bring suit against the Republic. In particular, Section 11 of the Global Security, titled "Enforcement," generally bars individual actions relating to the Securities. Under this No-Action Clause, Section 11 permits such actions only if Holders can satisfy five specified requirements that center on providing the Securities' Trustee (the Bank of New York Mellon) the opportunity to bring the suit itself, on behalf of all Holders.

Specifically, under Section 11 of the Global Security, a Holder who wishes to "institute any suit, action or proceeding" against the Republic must first:

1. "give[] to the Trustee written notice of default";

2. on behalf of "the Holders of not less than 25% in aggregate . . . amount of the Outstanding Securities," make a "written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee under the Indenture";

3. "provide[] to the Trustee such reasonable indemnity and/or security as it may require" to bring such action;

---

[1] There are separate 2005 and 2010 Global Securities with "materially identical" terms. *Aurelius III*, 2024 WL 1367960, at *3. References in this brief are to the 2005 Global Security, which is attached to Plaintiffs' Complaint as Exhibit B.

4.  give the Trustee "60 days after its receipt of such notice . . . to institute any such action"; and

5.  ensure that "no direction inconsistent with such written request shall have been given to the Trustee" by a majority of the Holders.  (Compl. Ex. B (2005 Global Security) § 11, at R-13.)

Finally, even if a Holder meets all five of these requirements, a Holder cannot bring a lawsuit on its own behalf.  It can only step into the shoes of the Trustee and sue "for the equal, ratable and common benefit of all Holders."  (*Id.*; *see also* Compl. Ex. A (Indenture) § 5.2(xxxv), at 32 (Trustee must act in the "general interests of the Holders").)

**B.    This Court's Dismissal of the Prior Actions**

In January 2019, Aurelius filed suit on its own behalf alleging that the Republic breached the Global Security by failing to make a payment for Reference Year 2013.  *See Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 19-cv-0351, ECF No. 1.  Other investors filed copycat complaints on their own behalf.[2]  On January 7, 2020, this Court dismissed the *Aurelius* complaint. *Aurelius I*, 2020 WL 70348, at *6–8.  Aurelius and the other plaintiffs filed amended complaints shortly thereafter, which ultimately survived a motion to dismiss.  *Aurelius Cap. Master, Ltd.* v. *Rep. of Argentina*, 2021 WL 1177465, at *12 (S.D.N.Y. Mar. 29, 2021) ("*Aurelius II*").

On March 31, 2024, this Court granted summary judgment to the Republic based on Plaintiffs' failure to comply with the Securities' No-Action Clause, which generally bars individual lawsuits.  *Aurelius III*, 2024 WL 1367960, at *7.  The Court rejected Plaintiffs' effort to end-run the No-Action Clause by suing individually under Section 4.9 of the Indenture, because

---

[2]      *ACP Master, Ltd.* v. *Rep. of Argentina*, 19-cv-10109; *Novoriver S.A.* v. *The Argentine Rep.*, 19-cv-09786; *683 Capital Partners, LP* v. *Rep. of Argentina*, 19-cv-10131; *Adona LLC, et al.* v. *Rep. of Argentina*, 19-cv-11338; *Ape Group SPA, et al.* v. *Rep. of Argentina*, 20-cv-10409.

that provision "creates an individual right of action as applied to payments for principal of and interest on a stated maturity date," which does not apply to Plaintiffs' claims. *Id.* at *11–12. After consulting the dictionary definitions of "principal" and "interest," the Court correctly held that "under their natural and ordinary meanings" those terms do not encompass the contingent payments under the Global Security that Plaintiffs claimed they were owed. *Id.* at *11. The first page of the Global Security confirms that interpretation:  it "makes clear" by "set[ting] out, in capital letters" that "HOLDERS OF THIS SECURITY ARE NOT ENTITLED TO RECEIVE PRINCIPAL IN THE AMOUNT OF, OR INTEREST BASED ON, SUCH NOTIONAL AMOUNT." *Id.* (citing (Compl. Ex. B (2005 Global Security) at 1)).

## C.    Plaintiffs' Appeal of the Prior Actions

On April 29, 2024, Plaintiffs appealed this Court's decision granting summary judgment in favor of the Republic. *In re Argentine GDP-Linked Sec. Litig.*, 24-1209 (2d Cir.), ECF No. 1. On appeal, Plaintiffs claim that "the district court's decision [] fundamentally misapprehends the purpose of no-action clauses" and is "wrong." *Id.*, ECF No. 46.1 at 1, 46. Briefing on the pending appeal before the Second Circuit is scheduled to conclude by January 31, 2025.

## D.    This Serial Litigation

On September 25, 2024, Plaintiffs filed the Complaint in this action, invoking C.P.L.R. § 205(a) to try to resuscitate their previously-dismissed lawsuit, seeking, again, payment "for Reference Year 2013" on their own behalf (Compl. ¶ 4) and now, for the first time, on behalf of all other Holders of the Securities (*id.* ¶ 20). Plaintiffs allege that their Complaint, supposedly pursuing the same claims "as asserted in the Prior Actions" now on appeal, can be refiled under this provision, because, *inter alia*, "this action is being commenced and service is being effected

within six months of the dismissal of the Prior Actions on April 1, 2024." (*Id.* ¶¶ 1, 4.) Plaintiffs further allege that, since this Court dismissed the Prior Actions, they have "complied" with the No-Action Clause, because Plaintiffs, along with unidentified "others, whose beneficial holdings of the 2005 and 2010 GDP Securities exceed 25% in aggregate notional amount . . . made a written request to the Trustee" on July 25, 2024, to commence an action in its own name and offered the Trustee reasonable indemnity, but the Trustee did not respond within 60 days. (*Id.* ¶¶ 4, 45–47.)

## ARGUMENT

## I.    PLAINTIFFS' LATEST COMPLAINT IS UNTIMELY BECAUSE IT DOES NOT COMPLY WITH C.P.L.R. § 205(a).

To try to evade this Court's dismissal, Plaintiffs refiled their Complaint alleging a right to payment under the Securities for Reference Year 2013. Plaintiffs invoked C.P.L.R. § 205(a), a tolling provision under New York law, which provides:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months *after the termination* provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

(Emphasis added.)

C.P.L.R. § 205(a) can be invoked only to "commence a new action upon the same transaction or occurrence . . . within six months *after the termination*." C.P.L.R. § 205(a) (emphasis added). Courts have held that the "termination" of an action under C.P.L.R. § 205(a) occurs either: (i) 30 days after the entry of a dismissal order, which is when a plaintiff's right to appeal expires; *or* (ii) if an appeal is taken, upon termination of the appeal. The New York Court

of Appeals has held that "where an appeal is taken as of right, the prior action terminates for purposes of CPLR 205(a) when the nondiscretionary appeal is truly 'exhausted,' either by a determination on the merits or by dismissal of the appeal." *Malay*, 25 N.Y.3d at 329. Thus, in *Cestaro* v. *Prohaska*, for example, Judge Rakoff held that "under CPLR[] 205(a), a previous action is considered terminated only at the expiration of the party's right to appeal – *i.e.*, 30 days after the dismissal order *assuming no appeal is taken*." 669 F. Supp. 3d 276, 285 (S.D.N.Y. 2023) (emphasis added).

   Section 205(a) does not apply to complaints—like this one—filed *before* the prior action terminated and during the pendency of an appeal. *See Palatkevich* v. *Choupak*, 152 F. Supp. 3d 201, 225 (S.D.N.Y. 2016) ("CPLR § 205 applies only to lawsuits brought 'within six months *after* the termination' of the former lawsuit."). During an appeal, "the six-month period" of Section 205(a) "does not commence *since termination of the prior action has not yet occurred*." *Lehman Bros.* v. *Hughes Hubbard & Reed, L.L.P.*, 92 N.Y.2d 1014, 1016 (1998) (emphasis added). This reading of C.P.L.R. § 205(a) supports judicial efficiency and the avoidance of duplicative litigation. *See Malay*, 25 N.Y.3d at 329 (noting "[i]n interpreting [C.P.L.R. § 205(a)], we are [] mindful of judicial economy"). Indeed, the New York Court of Appeals has explained that requiring commencement of "a new action while an appeal on the prior action is pending would be wasteful of the limited time and resources of courts and litigants." *Id.* at 330.

   Plaintiffs filed their Complaint on September 25, 2024, almost exactly six months after the Court's summary judgment decision on March 31, 2024. Plaintiffs' appeal of the Prior Actions was then—and still is—pending. *In re Argentine GDP-Linked Sec. Litig.*, 24-1209 (2d Cir.). Thus, the Prior Actions have not yet "terminated" for purposes of C.P.L.R. § 205(a).

## II.    PLAINTIFFS CANNOT BRING EITHER THE REPRESENTATIVE OR INDIVIDUAL CLAIMS THAT THEY NOW PURPORT TO PURSUE.

In their latest Complaint, Plaintiffs seek to expand dramatically upon their previous lawsuits by asserting claims on behalf of all Holders of the Securities.  (*See* Compl. ¶ 20 (seeking Reference Year 2013 payments for "*all* the GDP Securities issued") (emphasis added).)  But those newly-minted claims are time-barred and cannot be revived by C.P.L.R. § 205(a) (Section II.A).  Plaintiffs alternatively purport to bring claims for their sole benefit—for "those portions of the Payment Amount representing each Plaintiff's beneficial ownership interest in the GDP Securities."  (Compl. ¶ 49.)  But those claims are barred by the No-Action Clause itself, which permits claims only for the "equal, ratable and common benefit of all Holders" (Section II.B).  (Compl. Ex. B (2005 Global Security) § 11, at R-13.)

### A.    Plaintiffs Cannot Assert the Time-Barred Claims of Other Holders Not Party to the Prior Actions.

In their current Complaint, Plaintiffs seek "the unpaid $1,321,922,620 Payment Amount due with respect to the GDP Securities for Reference Year 2013," which is the *entire* payment allegedly due to all Holders for Reference Year 2013.  (Compl. ¶ 49; *see also id.* ¶ 85 ("The notional amount of outstanding GDP Securities was approximately $17.2 billion as of December 15, 2014.  [] Thus, the Payment Amount for 2013 is $1,321,922,620, *i.e.*, . . . $0.07680 per notional dollar of GDP Securities.").)  Plaintiffs concede that they are not beneficial owners of all the Securities (*e.g.*, Compl. ¶ 45), nor were all the Securities subject to the Prior Actions.  Thus, by seeking the entire Payment Amount allegedly due for Reference Year 2013, they pursue claims on behalf of other Holders.  Those time-barred claims cannot be resuscitated by C.P.L.R. § 205(a).

*First*, the Prescription Clause provides that "[a]ll claims against the Republic for any amounts due hereunder (including Additional Amounts) shall be prescribed unless made

*within five years from the date on which such payment first became due*, or a shorter period if provided by law." (Compl. Ex. B (2005 Global Security) § 14, at R-14 (emphasis added).)  The Republic announced that there would be no payment for Reference Year 2013 on December 15, 2014 (the "No Payment Announcement").  (Compl. ¶ 10.)  Thus, the Prescription Clause "prescribe[d] the Republic's obligation" to pay claims for Reference Year 2013 "where the security holder fail[ed] to assert a right to payment" *by December 15, 2019*.  *Ape Group SPA* v. *Rep. of Argentina*, 2022 WL 463309, at *3 (S.D.N.Y. Feb. 15, 2022).  In addition, New York's six-year statute of limitations for breach of contract claims, *see* C.P.L.R. § 213(2), bars any claims not filed by December 15, 2020.

In their 2019 and 2020 complaints, Plaintiffs pursued claims based only on their own beneficial holdings, and not, as in their current Complaint, for the full Payment Amount purportedly owed to all Holders.[3]  Neither Plaintiffs nor anyone else "assert[ed] a right to payment" on behalf of Holders other than Plaintiffs before December 15, 2019 (the deadline under the Prescription Clause) *or* December 15, 2020 (the deadline under New York's six-year statute of limitations).  Plaintiffs' claims on behalf of other Holders are therefore expired.

*Second*, Plaintiffs cannot use C.P.L.R. § 205(a) to resuscitate those time-barred claims on behalf of Holders who were not party to the Prior Actions.  The six-month post-termination tolling period in C.P.L.R. § 205(a) applies only to dismissed claims brought by the same plaintiffs who brought the original action.  *See* C.P.L.R. § 205(a) (new action must be filed

---

[3]    *See, e.g.*, *Adona*, 19-cv-11338, Compl., ECF No. 40-1 ¶ 29 ("Plaintiffs have the right to bring this action on their own behalf in order to pursue the remedies available to a holder of the GDP Warrants with respect to their beneficial holdings."); *Aurelius*, 19-cv-0351, Compl., ECF No. 1 ¶ 8 ("Plaintiff has the right to bring this action on its own behalf to pursue the remedies available to a holder of the Global Security with respect to its beneficial holdings.").

by "the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator").

New York courts have held that this requirement bars refiling by or on behalf of anyone who is not an original plaintiff. To avoid "breath[ing] life into otherwise stale claims," the New York Court of Appeals refuses to "read 'the plaintiff' to include an individual or entity other than the original plaintiff." *Reliance Ins. Co.* v. *PolyVision Corp.*, 9 N.Y.3d 52, 57–58 (2007) (affirming dismissal under C.P.L.R. § 205(a) of claim on behalf of entity related to original plaintiff). In *ACE Sec. Corp.* v. *DB Structured Prod., Inc.*, for example, a trustee of residential mortgage-backed securities tried to use C.P.L.R. § 205(a) to "revive" a lawsuit originally filed by two certificateholders. 38 N.Y.3d 643, 650 (2022). The New York Court of Appeals said no, explaining that the trustee, although it acts for all holders, "is not 'the plaintiff' in the prior action and the benefit of CPLR 205(a) is unavailable to save its untimely complaint." *Id.* at 655; *see also Craft EM CLO 2006-1, Ltd.* v. *Deutsche Bank AG*, 117 N.Y.S.3d 2, 4 (N.Y. App. Div. 2019) ("plaintiff, who originally timely sued . . . could not rely on CPLR 205(a) when it refiled the suit as assignee of the trustee's claims, which were time-barred").

Simply put, the Prescription Clause and the statute of limitations each bar Plaintiffs' claims on behalf of other Holders because those Holders were not parties to the Prior Actions.

**B.    The No-Action Clause Bars Plaintiffs From Pursuing Their Alternative Claims for Their Sole Benefit.**

Plaintiffs' alternative claims, for their sole and personal benefit, are also barred directly by the Global Security. Under the Global Security, even if the five preconditions of the No-Action Clause are satisfied (and they are not met here), a Holder may only sue for the "equal, ratable and common benefit of all Holders." (Compl. Ex. B (2005 Global Security) § 11, at R-13.) This provision prohibits Plaintiffs from pursuing their alternative claims for "those portions of the

Payment Amount representing each Plaintiff's beneficial ownership interest in the GDP Securities." (Compl. ¶ 49.)

This Court should enforce the plain language of the No-Action Clause, which forbids such individualized claims. *See RBC Cap. Mkts., LLC* v. *Educ. Loan Tr. IV*, 2011 WL 6152282, at \*5 (Del. Ch. Dec. 6, 2011) ("[N]o-action clauses ensure that any remedy attained by noteholders for a violation of the trust indenture will be shared equally.") (applying New York law); *see also Feldbaum*, 1992 WL 119095, at \*6 (one of the purposes of no-action clauses is to ensure that "*all rights and remedies* of the indenture are for the equal and ratable benefit of *all holders*") (emphasis added) (quoting Am. Bar Found. *Commentaries on Indentures*, § 5.7 at 232 (1971)).

## III.   PLAINTIFFS STILL HAVE NOT COMPLIED WITH THE NO-ACTION CLAUSE.

Even if Plaintiffs could bring time-barred claims on behalf of additional Holders or could litigate personal claims—and they cannot—Plaintiffs still have not satisfied the No-Action Clause. Their attempt to do so after the Trustee's time to sue expired, when the Trustee was unable to act, does not comply with a contractual requirement to give the Trustee an option to control all litigation on behalf of Holders.

Under Section 11 of the Global Security, one precondition with which Holders must comply is to provide a "written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee under the Indenture." (Compl. Ex. B (2005 Global Security) § 11, at R-13.) This request must be made on behalf of Holders "of not less than 25% in aggregate notional amount of the Outstanding Securities." (*Id.*) Without completing that step, "no Holder of a Security *shall have any right . . . to institute any suit, action or proceeding*." (*Id.* (emphasis added).)

Plaintiffs allege that, on July 25, 2024, they "made a written request to the Trustee to institute an action, in its own name as Trustee, against the Republic for its failure to make the payment required under the GDP Securities for Reference Year 2013." (Compl. ¶ 45.) Plaintiffs claim that they made this request on behalf of themselves *and* unnamed "others" who did not participate in the Prior Actions—and it is only with these "others" that Plaintiffs allegedly satisfy the 25 percent beneficial-interest threshold required to make a demand of the Trustee. (*Id.*) All this happened more than nine years after the December 2014 No Payment Announcement giving rise to these claims. (*Id.* ¶ 10.)

Plaintiffs' request was an empty gesture. The Trustee was unable to "institute such action . . . *in its own name as Trustee*," (Compl. Ex. B (2005 Global Security) § 11, at R-13), for the payment allegedly owed for Reference Year 2013: both the five-year prescription period in the Global Security and the six-year statute of limitations had long since lapsed—in December 2019 and December 2020, respectively, (*see id.* § 14, at R-14); C.P.L.R. § 213(2). And as explained above, the Trustee could not have relied on C.P.L.R. § 205(a) to take over Plaintiffs' dismissed claims or bring time-barred claims on behalf of all Holders. *ACE Sec. Corp.*, 38 N.Y.3d at 655 (trustee cannot rely on prior action by certificateholders to sue under C.P.L.R. § 205(a)). Thus, the Trustee was never afforded an opportunity to pursue timely claims in its own name on behalf of all Holders.

The purpose of the No-Action Clause would be fatally undermined if Plaintiffs could "comply" with it by (1) belatedly amassing a group of Holders to reach the 25 percent threshold years after claims became time-barred, (2) asking the Trustee to bring untimely claims, and then (3) suing when the Trustee inevitably does not bring suit. No-action clauses advance "the primary purpose of . . . indentures[, which] is to centralize enforcement powers" in the Trustee.

*Feldbaum*, 1992 WL 119095, at \*6, n.11.  Beyond giving the Trustee "the first opportunity to decide whether to bring a lawsuit before any individual Certificateholder may sue," no-action clauses benefit holders by making it "more difficult for others to bring 'lone ranger' suits," and also protecting potential defendants "against defending numerous litigations."  *Fed. Hous. Fin. Agency* v. *WMC Mortg., LLC*, 2015 WL 9450833, at \*5 (S.D.N.Y. July 10, 2015).

All of these benefits were forfeited here.  When Plaintiffs filed the Prior Actions, they elected to ignore the requirement to mobilize 25 percent of Holders, secure indemnity, and request that the Trustee pursue a lawsuit on behalf of all Holders.  The Trustee thus had no opportunity to decide whether to participate.  Indeed, Plaintiffs brought their own individual actions—without the support of other Holders—seeking to modify the Global Security in ways that may not benefit other Holders, and therefore risk running contrary to the Global Security's requirement that "no one or more Holder shall have any right . . . to affect, disturb or prejudice the rights of any other Holder of Securities."  (Compl. Ex. B (2005 Global Security) § 11, at R-13.)  And the Republic has been forced to defend litigation that should never have been filed.

Plaintiffs cannot fix their errors by asking the Trustee to do what it cannot.  New York law interprets contracts "in light of the business purposes sought to be achieved by the parties," not in a vacuum.  *Newmont Mines Ltd.* v. *Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) (quoting *Champion Int'l Corp.* v. *Continental Casualty Co.*, 546 F.2d 502, 505 (2d Cir. 1976)); *see also Thompson* v. *Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) (courts "giv[e] due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish") (internal quotations omitted).  Courts reject an interpretation "that frustrates the purpose of that contract or that makes any provision of the contract meaningless."  *Fan Engine Securitization Ltd.* v. *Deutsche Bank Tr. Co. Ams.*, 2019 WL 4805569, at \*3 (S.D.N.Y. Oct. 1,

2019) (quoting *Rex Med. L.P.* v. *Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010)); *see also U.S. Bank Nat. Ass'n* v. *Barclays Bank PLC*, 2013 WL 1180414, at *6 (S.D.N.Y. Mar. 12, 2013) (courts avoid interpretations that "would significantly undermine—if not completely frustrate—the purpose of [any provision]"); *Tracy* v. *NVR, Inc.*, 737 F. Supp. 2d 129, 132 (W.D.N.Y. 2010) ("Where a contractual interpretation would nullify or frustrate the purpose of some of its provisions, the court may properly reject it.").  The business purpose here is to ensure that litigation that could affect the rights of all Holders does not get off the ground without adequate (25 percent) support and is channeled through the Trustee.  That cannot happen when the requisite support appears years after the prescription and statute of limitations periods have run, in the form of a request on which the Trustee cannot act.

In analogous circumstances, courts reject supposed compliance with a contract that comes too late to serve its purpose.  In *Allstate Ins. Co.* v. *Longwell*, the policyholder, seeking to recover on an insurance policy following damage to his home, submitted to an examination under oath pursuant to a cooperation clause in an insurance policy but refused to answer certain questions.  735 F. Supp. 1187, 1189 (S.D.N.Y. 1990).  The insurer then denied the policyholder's claims.  *Id.*  The question before the court was whether the policyholder's "offer to answer the questions and to sign [] the transcript in tardy fashion cures his breach under the contract."  *Id.* at 1193.  The court concluded that it "does not, as too much time elapsed, defeating the purpose of the cooperation clause."  *Id.* at 1195.

Similarly, here, by waiting until July 2024 to amass 25 percent support for a demand and to approach the Trustee, more than four and three *years* after the cause of action expired under the Prescription Clause and the statute of limitations, respectively, when Plaintiffs knew the Trustee could no longer file suit, "too much time elapsed, defeating the purpose of the

[No-Action] clause." *Id.*; *see also Azeem* v. *Colonial Assurance Co.*, 468 N.Y.S.2d 248, 250 (N.Y. App. Div. 1983) ("Plaintiff's proffered willingness to submit to an examination under oath almost a year and a half after the examination was first scheduled and over two years after the fire does not satisfy his contractual obligation of co-operation."); *Dyno-Bite, Inc.* v. *Travelers Cos.*, 439 N.Y.S.2d 558, 561 (N.Y. App. Div. 1981) ("promises of evidence to be supplied in some indefinite future" do not satisfy cooperation obligation under insurance policy).

## IV.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED COMPLIANCE WITH OTHER THRESHOLD REQUIREMENTS FOR BRINGING THEIR CLAIMS.

The Complaint also suffers from two additional defects:  Plaintiffs have not pled that they own the litigation rights of their Securities (Section IV.A), and the Global Security's Prescription Clause bars the majority of WASO's claims (Section IV.B).

### A.    Plaintiffs Do Not Plead That They Possess the Right To Bring Their Latest Claims.

Under New York law, "[i]t is the Plaintiffs' burden to demonstrate their standing to sue for claims related to each [security]." *Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540, 565 (S.D.N.Y. 2022).  Breach of contract claims accrue "at the time of the breach." *Breitman* v. *Xerox Educ. Servs., LLC*, 2013 WL 5420532, at *5 (S.D.N.Y. Sept. 27, 2013) (quoting *Ely–Cruikshank Co.* v. *Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)).  Here, the alleged breach occurred, and the right to litigate that alleged breach accrued, *on December 15, 2014*, the date of the No Payment Announcement.  (*See* Compl. ¶ 10.)

Litigation rights do not generally transfer automatically with the sale of a security. *See DNAML Pty, Ltd.* v. *Apple Inc.*, 2015 WL 9077075, at *4 (S.D.N.Y. Dec. 16, 2015) (explaining that, at common law, the right to sue was "a personal right separate from the property that gave rise to the right" and accordingly, "the transfer of property was a separate act from the transfer of

a right incident to the property"). In New York, this rule has been modified by statute for some claims. *See* N.Y. Gen. Oblig. Law § 13-107 (providing a default rule that a transfer of a bond also transfers claims or demands of the transferrer). But "many jurisdictions generally do not recognize an assignment of a litigation right or claim when an underlying property is transferred" without an express manifestation of an intention to transfer the right. *Royal Park Invs. SA/NV* v. *HSBC Bank USA, N.A.*, 2018 WL 679495, at *4 (S.D.N.Y. Feb. 1, 2018).

　　　　A plaintiff claiming losses incurred by earlier holders of a security must prove that the right to sue was either expressly assigned or transferred automatically under operation of the law governing each transaction from the holder at the time of the alleged breach to each subsequent holder in the chain of custody. *See BlackRock Balanced Cap. Portfolio (FI)* v. *Deutsche Bank Nat'l Tr. Co.*, 2018 WL 5619957, at *11–12 (S.D.N.Y. Aug. 7, 2018) (explaining "the Court must [] engage in an individualized inquiry to learn who retained the litigation rights for each security"); *Royal Park*, 2018 WL 679495, at *4 (holding a "[bond]holder has standing to sue only if every prior transaction in the chain included an assignment of the right to sue along with the underlying [bond]"). So, for example, a plaintiff seeking the benefit of New York's automatic transfer statute must show that all the underlying sales were governed by New York law. *See Semi-Tech Litig., LLC* v. *Bankers Tr. Co.*, 272 F. Supp. 2d 319, 330 (S.D.N.Y. 2003) (the "question [of whether § 13-107 applies to contracts for the sale of securities] is controlled, as to each sale, by New York choice of law principles").

　　　　To adequately plead the right to bring their claims, Plaintiffs must allege that they either (i) owned the Securities at issue at the time of the No Payment Announcement, or (ii) that the right to sue transferred from each previous holder of the Securities on which they now purport to sue, dating back to the No Payment Announcement. *See Racepoint Partners LLC* v. *JPMorgan*

*Chase Bank*, 2006 WL 3044416, at *5 (S.D.N.Y. Oct. 26, 2006) (dismissing case where plaintiffs failed to "allege facts to show that . . . [the] transferrers would have automatically acquired the claims of all the previous noteholders").

Plaintiffs satisfy neither requirement.  The Complaint does not allege that these Plaintiffs held the Securities at the time of the No Payment Announcement, or that they thereafter validly acquired the litigation rights for the Securities they now hold.  At most, Plaintiffs allege that they are the current beneficial owners of the Securities (which has nothing to do with litigation rights).  Some of the Plaintiffs also allege that their management companies were located in New York at the time the Securities were purchased.  (Compl. ¶¶ 21–37.)  But even if this allegation were sufficient to establish that this subset of securities purchases was governed by New York law and could benefit from New York's automatic transfer statute (it is not), as previously explained, "Plaintiffs do not . . . allege facts to show that New York law governed *every prior transfer* of the notes at issue in this case, such that their transferrers would have automatically acquired the claims of all the previous noteholders."  *Racepoint Partners*, 2006 WL 3044416, at *5 (emphasis added).  As such, Plaintiffs have not pled that they possess the litigation rights to bring these claims.

**B.    The Prescription Clause Bars WASO's and the Ape Group Plaintiffs' Claims.**

WASO's and the Ape Group Plaintiffs' claims are untimely under the Prescription Clause.  This provision "prescribes the Republic's obligation" to pay claims for Reference Year 2013 "where the security holder fail[ed] to assert a right to payment" by December 15, 2019—*i.e.*, within five years of when the claims purportedly arose.  *Ape Group SPA*, 2022 WL 463309, at *3.

WASO concedes that it purchased approximately 80 percent of its Securities (over $557 million in notional value) *more than nine months after* the five-year prescription period expired on December 15, 2019.  *See Adona*, 19-cv-11338, Pls.' Response to Argentina's Rule 56.1 Statement, ECF No. 135 ¶ 225.  Because WASO did not timely make any claim for the "amounts

due" associated with a portion of its Securities within the five-year prescription period, the Prescription Clause bars those claims.

The Ape Group Plaintiffs' claims are also untimely under the Prescription Clause, which states that "[a]ll claims against the Republic . . . shall be prescribed unless made within five years." *Ape Group SPA*, 2022 WL 463309, at *2. The Ape Group Plaintiffs did not file a lawsuit within this five-year period. While this Court previously held that the Prescription Clause did not supersede New York's six-year statute of limitations for breach of contract actions, *id.* at 3, this issue is currently on appeal, and the Republic respectfully submits, for preservation purposes, that the Ape Group Plaintiffs did not properly assert their claims within the contractual five-year period.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:      (212) 558-4000
Facsimile:      (212) 558-3588

*Counsel for the Republic of Argentina*

January 27, 2025

### <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this memorandum of law contains 6,087 words in compliance with Local Civil Rule 7.1(c) and Rule 2.B of the Individual Practices of the Honorable Judge Loretta A. Preska.

<u>/s/ *Robert J. Giuffra, Jr.*</u>
Robert J. Giuffra, Jr.